UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RICHARD B., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:21 CV 1157 JMB |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court for review of an adverse ruling by the Social Security Administration. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

**I. Procedural History**

On July 11, 2019, Plaintiff Richard B. filed an application for a period of disability and disability insurance benefits, Title II, 42 U.S.C. §§ 401 *et seq* (Tr. 208-209). He alleged that he became disabled on June 25, 2018, because of back pain, heart issues, bipolar disorder, and panic disorder (Tr. 261). He also claimed that he has carpal tunnel syndrome affecting his wrists and painful knees (Tr. 282). After Plaintiff's applications were denied on initial consideration (Tr. 76-90), and reconsideration (Tr. 91-105), he requested a hearing before an Administrative Law Judge (ALJ) (Tr. 127-128).

Plaintiff and counsel appeared for a hearing on November 12, 2020 and March 3, 2021[1] (Tr. 37-75). Plaintiff testified concerning his disability, daily activities, functional limitations, and

---

[1] The hearing was apparently continued because of technical difficulties.

past work.  The ALJ also received testimony from vocational expert Melinda Stahr.  The ALJ issued a decision denying Plaintiff's applications on April 30, 2021 (Tr. 10-25).  The Appeals Council denied Plaintiff's request for review on August 30, 2021 (Tr. 7-10).  Accordingly, the ALJ's decision stands as the Commissioner's final decision.

## II.  Evidence Before the ALJ

### A.  Disability and Function Reports and Hearing Testimony

Plaintiff was born in March, 1966 and was 52 years old on the alleged onset date and 55 years old on the date of the second hearing (Tr. 208).  He lives alone in a two-story apartment (Tr. 47).  He has a GED (Tr. 47-48).  He worked as a machinist, operating machinery and loading/unloading trucks by forklift and by hand, and made on average $25,800 per year since 2005 (Tr. 217, 270-271).

Plaintiff listed his disabling impairments as back pain, heart issues, bipolar disorder, panic disorder, carpal tunnel syndrome, and painful knees (Tr. 261, 282). In October, 2019, he took Acetaminophen for pain, Abilify, Cartia X, and Pravachol (but did not indicate what condition the latter three are related to) (Tr. 263, 288).  He also reported other medications on July 8, 2020 and December 23, 2020, including Paroxetine (depression/anxiety/panic attacks), Lorazepam (anxiety), Methocarbamol (muscle relaxer/back pain), Divalproex (depression/bipolar), Lithium Carbonate (bipolar), Diltiazem (supra ventricular tachycardia), Dimenhydrinate (vertigo/motion sickness), and Atrovastatin (high cholesterol) (Tr. 322, 325).

Plaintiff's October, 2019 Function Report states that he has trouble sleeping due to back pain (Tr. 283).  He is able to self-care but has difficulty dressing, bathing, and using the toilet (getting on and off) (Tr. 283).  He prepares his own simple meals, performs housework and goes for a 1 mile walk most days (Tr. 285-6).  However, he otherwise mostly stays home and watches

TV, occasionally visits friends, goes to the park a few times, and goes to the grocery store once a week (Tr. 286). He can pay attention, follow clear instructions, gets along with others, does well with routine changes; but he sometimes gets stressed out and is fearful about his health, finances, and the future (Tr. 287-288). He uses wrist braces and a back brace when lifting (Tr. 288). He can also drive and can occasionally lift 20 to 30 pounds (Tr. 287).

Plaintiff testified at the November 2020 hearing that he was injured at work in June, 2018 but did not file a claim for worker's compensation until August, 2019 and was not seen by a doctor for the injury until January, 2020 (Tr. 48, 233-234). The claim was denied in March, 2020 (Tr. 51).

With respect to his physical impairments, Plaintiff testified that he has pain in his knees, back, and hands and a heart condition (Tr. 59). He also has mental impairments, Bipolar II, depression, panic and anxiety disorder, and personality disorder (Tr. 59). Both of his knees are painful and make it difficult to walk and go up and down stairs (Tr. 59-60). He walks and moves slowly because of his knees and back and cannot jog (Tr. 65). He has lost grip strength in his hands, they cramp and go numb with tingling up his arms (Tr. 60). He wears compression gloves all the time (Tr. 60). He has pain throughout his back with bulging discs in his lower back and probably his neck (Tr. 61). He was unable to get an MRI of his mid back or physical therapy because his insurance did not cover it (Tr. 61). In addition, he has irregular heartbeats, leaking heart valves, and a slow pulse (Tr. 62).

He testified that he takes medications and sees a therapist and psychiatrist for this mental disorders (Tr. 61). His conditions cause him to isolate in his apartment; he testified that he hasn't had friends for years, he doesn't talk to anybody, and that he has mood swings (Tr. 64). His panic attacks and anxiety cause heart palpitations and hyperventilation for which he goes to the

emergency room (Tr. 64).  His depression causes lack of energy and interest (Tr. 64).  Finally, he testified that in the past he had various side effects from his medications, but the current combination has been the best; sometimes he does, however, have trouble sleeping, low energy, and fogginess from his current medications (Tr. 63).

Vocational expert Melinda Stahr testified that Plaintiff's past work as a machinist was classified as medium and skilled, but was performed as heavy and skilled (Tr. 68).  Ms. Stahr was asked to testify about the employment opportunities for a hypothetical person of Plaintiff's age, education, and work experience who was able to perform medium exertional level work, but was limited to frequently climbing ramps and stairs, occasionally climbing ladders, ropes, or scaffolds, and frequently reaching overhead with the bilateral upper extremities.  In addition, the individual could perform simple, routine tasks with minimal changes in job duties and settings who should avoid fast paced production-type work and should only occasionally interact with supervisors and co-workers (Tr. 68-69).  Based on this hypothetical, Ms. Stahr stated that such an individual would be unable to perform Plaintiff's past work (Tr. 69).  However, other jobs were available in the national economy, such as janitor, prep cook, and kitchen helper, all at the medium exertional level (Tr. 69).  Ms. Stahr stated that her testimony was consistent with the Dictionary of Occupational Titles (DOT) and based on her experience[2] (Tr. 69).

Ms. Stahr was also asked to testify about a hypothetical person of Plaintiff's age, education, and work experience who could perform light exertional work with additional limitations including: only occasionally climbing ramps and stairs and never climbing ladders, ropes or scaffolds; frequently balancing; occasionally stooping, kneeling, crouching and crawling; occasionally reaching overhead with the bilateral upper extremities; avoiding hazards such as

---

[2] Ms. Stahr testified that the DOT does not address overhead reaching, pace of production, and public interaction factors.

Page **4** of **18**

unprotected heights and moving, mechanical parts; performing simple, routine tasks with minimal changes in job duties and settings; avoiding fast-paced, production work; and having occasional interaction with supervisors and coworkers (Tr. 70). Ms. Stahr testified that such a person could not perform Plaintiff's past work (Tr. 70). In her opinion, however, such a person could perform the following light work; maid or housekeeper, garment sorter, and mail sorter (Tr. 71). She further testified that if a person was absent from work for 2 days per month, he would not be employable; but, one day per month would be tolerated (Tr. 71). Finally, Ms. Stahr indicated that her testimony is consistent with the DOT and supplemented by her professional opinion, based on her experience and education, where the DOT was silent, as set forth above (Tr. 74).

      B.     **<u>Medical and Opinion Evidence</u>**

Plaintiff focuses on his back and heart conditions and vertigo in his brief (Doc. 16). As such, the Court also will focus on these areas.

On June 15, 2018, he was seen at Family Clinic, LLC by Dr. Yvonne Layugan on an initial encounter for back pain which was throbbing but not radiating (Tr. 330). His physical examination was largely normal with a negative straight leg test, but he did have paralumbar tightness (Tr. 331). He was directed to start Aleve and continue with his muscle relaxers, return if he didn't improve, and follow up in one month (Tr. 331). There is no evidence in the record that he followed up with Dr. Layugan.

On March 13, 2019, he presented at the emergency room at Mercy Hospital South with dizziness (Tr. 336). After an examination, the doctor concluded that his symptoms were consistent with generalized anxiety and suggested a psychiatric evaluation which Plaintiff declined; he was stable at discharge and directed to follow up with his primary care physician (Tr. 339). This encounter was preceded by a telephone encounter on March 4, 2019, and in person encounters on

February 5, 2019 and February 2, 2019, all with diagnoses of anxiety and suggestions to follow up with a primary care provider and a counselor (Tr. 340-346).

To establish primary care, Plaintiff began treatment at the South County Health Department and was evaluated on number of occasions from March 13, 2019 through January 7, 2021, where he presented with a number of complaints including anxiety, depression, vertigo, back pain, Bipolar disorder, and headaches (Tr. 362-363; 818; 866; 885). At the initial encounter, with Dr. Molly Nelson, he complained of panic attacks and chronic back pain; he indicated that lack of insurance prevented him from seeking help for these conditions prior (Tr. 410). Upon examination, he had chest pain with anxiety, constipation, and back pain with myalgia, but he was not in acute distress (Tr. 410). He had normal breath and heart sounds, a normal gait, and a normal affect and mood (Tr. 411). He was assessed with anxiety and depression and directed to wean off Lorazepam and continue taking sertraline (for anxiety) and given Hydroxyzine for panic attacks (Tr. 411). There is no indication that he was treated for back pain. Subsequent treatment notes reveal that on March 21, 2019, he was told to discontinue sertraline and start buspirone/buspar for panic attacks (Tr. 407, 405).

He was next examined on April 12, 2019 by Nurse Practitioner Walter Glauber who noted that he was "feeling well and good general health" with no acute distress (Tr. 397-8). The physical examination was normal and they discussed his depression and anxiety and possible change in medication – subsequent lab work was normal except for elevated cholesterol (Tr. 398, 396). But, two weeks later, on April 26, 2019, he sought care for chest palpitations and requested to see a cardiologist (Tr. 393). At that appointment, Plaintiff's cardiovascular examination was normal but he was referred to a cardiologist (Tr. 394). A subsequent examination on May 17, 2019 also resulted in a normal cardiovascular examination (Tr. 387). He was referred to an orthopedist on

June 5, 2019 and June 19, 2019 for back pain, and on August 13, 2019 he was referred to a neurologist for vertigo (Tr. 366, 377, 381).  During this time period, a bulk of the medical visits where with Dr. Mahmood Kanwal to address his mental health, including Bipolar disorder.  More recent visits were to address knee pain (Tr. 905-907).

On May 31, 2019, an MRI of his lumbar spine generally revealed mild degenerative changes with two areas of moderate conditions: a moderate disc bulge and a moderate left facet arthropathy at the L5-L5 level (Tr. 421-22).

He saw a cardiologist, Dr. Sudhir Jain, on May 14, 2019, May 29, 2019 and May 31, 2019 (Tr. 415, 438, 506).  All three, cardiovascular examinations revealed normal cardiovascular functioning and an echocardiography (ECG) revealed a "structurally normal heart"; but a 30 day heart monitoring device revealed supraventricular tachycardias ("SVT" -- abnormally fast heartbeats) and the ECG showed a sinus bradycardia (slow pulse) (Tr. 415-417).  In his assessment, Dr. Jain indicated that "SVT is generally a benign diagnosis" and suggested conservative treatment with the option to do an "invasive EP study and catheter ablation" (Tr. 417).  He was directed to follow up in a year (Id).  He was seen at an Arrhythmia Clinic on August 15, 2019 and another heart monitor was ordered with a routine follow up at three months (Tr. 591).  At that follow up appointment, on November 21, 2019, his physical examination was normal.  It was noted that his main complaint was dizziness and lightheadedness – the nurse practitioner who evaluated him noted that he was uninterested in the ablation suggested by Dr. Jain and planned a follow up in twelve months (Tr. 700).

But, he again saw Dr. Jain on December 5, 2019 with no changes in his normal examination or any new or additional treatments (Tr. 769).  At subsequent appointments on October 5, 2020 and January 11, 2021, he again had a normal physical examination and was offered conservative

treatment with a notation that he has an appointment to discuss ablation with electrophysiology (Tr. 910; 919).

Plaintiff also saw an otolaryngologist, Dr. Johnathan McJunkin, on July 5, 2019 for vertigo/tinnitus/dizziness (Tr. 525). Testing revealed some hearing loss but no inner ear dysfunction (Tr. 538). In a follow up with Dr. Helen Hwang on August 29, 2019, an MRI was ordered (Tr. 806-807). That MRI revealed a structurally normal brain (Tr. 800, 802). An October, 8, 2019 CTA scan of his head and cervical neck revealed[3] no structural problems that would explain Plaintiff's symptoms, and "no acute abnormality" of the cervical spine but with a finding of moderate degenerative disc disease as the C6-C7 level (Tr. 795-798).

As noted above, Plaintiff sought worker's compensation for a back injury. He was seen by a doctor on January 9, 2020 and it is reported that the injury occurred on January 9, 2020; but it is clear from the narrative that the doctor understood the injury to have occurred in 2018 (Tr. 774-275). His claim was subsequently denied.

### III.  Standard of Review and Legal Framework

To be eligible for disability benefits, Plaintiff must prove that he is disabled under the Act. See Baker v. Sec'y of Health & Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c (a)(3)(A). A claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot,

---

[3] Both scans revealed a foreign metallic object near his left eye; that condition does not appear related to any claim of disability.

considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Social Security Administration has established a five-step process for determining whether a person is disabled. See 20 C.F.R. § 404.1520; Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009). Steps one through three require the claimant to prove (1) he is not currently engaged in substantial gainful activity, (2) he suffers from a severe impairment, and (3) his disability meets or equals a listed impairment. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009); see also Bowen, 482 U.S. at 140-42 (explaining the five-step process). If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Pate-Fires, 564 F.3d at 942. "Prior to step four, the ALJ must assess the claimant's residual functional capacity (RFC), which is the most a claimant can do despite his limitations." Moore, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether claimant can return to his past relevant work, "review[ing] [the claimant's] [RFC] and the physical and mental demands of the work [claimant has] done in the past." 20 C.F.R. § 404.1520(e). The burden at step four remains with the claimant to prove his RFC and establish that he cannot return to his past relevant work. Moore, 572 F.3d at 523; accord Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006); Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005). If the ALJ holds at step four that a claimant cannot return to past relevant work, the burden shifts at step five to the Administration to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Banks v. Massanari, 258 F.3d 820, 824 (8th Cir. 2001); see also 20 C.F.R. § 404.1520(f).

The Court's role on judicial review is to determine whether the ALJ's finding are supported by substantial evidence in the record as a whole. Pate-Fires, 564 F.3d at 942. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." Id. Stated another way, substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008); see also Wildman v. Astrue, 964 F.3d 959, 965 (8th Cir. 2010) (same). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the ALJ's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The district court must "also take into account whatever in the record fairly detracts from that decision." Id.; see also Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (setting forth factors the court must consider). Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance.

Id.; see also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").

## IV.  **The ALJ's Decision**

The ALJ's decision in this matter conforms to the five-step process outlined above (Tr. 10-25).  The ALJ found that Plaintiff met the insured status requirements through December 31, 2023, and had not engaged in substantial gainful activity since June 25, 2018, the alleged onset date (Tr. 12).  At step two, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease, paroxysmal tachycardia, bipolar disorder, anxiety, and depression (Tr. 12).  The ALJ found that these impairments limit Plaintiff's ability to work, but that they are not disabling (Tr. 12).  The ALJ further found that Plaintiff had benign impairments of hypertension, hyperlipidemia, vertigo, bilateral patellofemoral syndrome, and a history of alcohol abuse (Tr. 13).  Finally, she found that Plaintiff presented unsupported ailments including obesity, osteoarthritis, and bilateral carpal tunnel syndrome (Tr. 13).

The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  The ALJ specifically addressed listings 1.04 (spine disorders), 4.05 (recurrent arrhythmias), 12.04 (depressive, bipolar, and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders).  Plaintiff does not challenge the ALJ's assessment of his severe impairments (except as to vertigo) or her determination that his impairments do not meet or equal a listing (Tr. 13-14).

The ALJ next determined that Plaintiff had the RFC to perform medium work, except that he could: frequently climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds;

frequently reach overhead with his bilateral upper extremities; is able to complete simple, routine tasks with minimal changes in job duties and setting; must avoid fast-paced production work and can have occasional interaction with supervisors and coworkers (Tr. 14).  In assessing Plaintiff's RFC, the ALJ summarized the medical record; written reports from Plaintiff; Plaintiff's work history; and Plaintiff's testimony regarding his abilities, conditions, and activities of daily living (Tr. 14-22).  Plaintiff asserts that the ALJ improperly assessed the severity of his conditions, and that the RFC is not supported by substantial evidence.

At step four, the ALJ concluded that Plaintiff was unable to return to any past relevant work (Tr. 23).  His age on the alleged onset date placed him in the "closely approaching advanced age" category (Tr. 23).  He had at least a high school education (Tr. 23).  The transferability of job skills was not an issue because using the Medical-Vocational Rules as a framework supported a finding that Plaintiff was not disabled whether or not he had transferable job skills (Tr. 23).  The ALJ found at step five that someone with Plaintiff's age, education, work experience, and residual functional capacity could perform other work that existed in substantial numbers in the national economy, namely as an janitor, prep cook, and kitchen helper (Tr. 23-24).  Thus, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act from June 25, 2018 to April 30, 2021 — the date of the decision (Tr. 24).

## V. Discussion

Plaintiff argues that the ALJ mischaracterized and minimized his back and heart condition and that, if she would have appropriately considered his conditions and limited him to light work, he would have been found disabled given his age, education, and past work experience. Essentially, Plaintiff challenges the RFC determination.

The "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184 (July 2, 1996).  As the Eighth Circuit recently stated, "the RFC determination is a 'medical question,' that must be supported by some medical evidence of [Plaintiff's] ability to function in the workplace.'" Noerper v. Saul, 964 F.3d 738, 744 (8th Cir. 2020) (citations omitted).  "But, the RFC is a decision reserved to the agency such that it is neither delegated to medical professionals nor determined exclusively based on the contents of medical records." Id. (citation and parenthetical omitted).  "[A]lthough medical source opinions are considered in assessing RFC, the final determination of RFC is left to the Commissioner, . . . based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or her] limitations." Id. at 744-45 (citations omitted).  "Similarly, the underlying determination as to the severity of impairments is not based exclusively on medical evidence or subjective complaints.  Rather, regulations set forth assorted categories of evidence that may help shed light on the intensity, persistence, and limiting effects of symptoms." Id. at 745 (footnote and citations omitted).  Similar factors guide the analysis of whether a claimant's subjective complaints are consistent with the medical evidence.  Id. (footnote, citation, and parenthetical omitted).  Ultimately, the claimant is responsible for providing evidence relating to his or her RFC and the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." Turner v. Saul, No. 4:18 CV 1230 ACL, 2019 WL 4260323, at *8 (E.D. Mo. Sept. 9, 2019) (quoting 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3)).

Plaintiff first argues the ALJ improperly characterized Plaintiff's back condition as mild even though the medical evidence shows that his condition was moderate. To support his argument, he points to the May, 2019 MRI of the lumbar spine which found a normal alignment, normal disc at the L1-L2 level; mild disc bulge at the L2-L3, L3-L4, and L5-S1 levels, and a moderate disc bulge at the L4-L5 level (Tr. 421-422). The overall impression was "mild degenerative changes of the lumbar spine as described in detail above. Right lateral recess stenosis at L4-L5, with abutment of the traversing right L5 nerve" (Tr. 422). He also argues that the CTA of his cervical spine showed "multilevel degenerative disc disease [ ] most prominent at the C6-C7, where it is moderate" (Tr. 668). Finally, he notes that agency doctor, Dr. Denise Trowbridge found that "his back disease is mild to moderate and would be accommodated by light lifting" (Tr. 87). Dr. Trowbridge and Dr. Donna McCall, another agency doctor, also found that it would be risky for him to work at heights or with heavy machinery.

In evaluating Plaintiff's back condition, the ALJ stated that the May 2019 MRI "showed mild degenerative changes of the lumbar spine" and that the October 2019 CTA scan revealed "no acute abnormality within the cervical spine" (Tr. 17, 18-19). The ALJ did not specifically address the particular moderate findings of the scans, as set forth above. However, the ALJ did outline that Dr. Layugan found chronic low back pain but that his physical examination was "largely normal except for paralumbar tightness" (Tr. 15, 330).[4] He also had a normal physical exam when he was treated by Nurse Practitioner Glauber on April 12, 2019 (Tr. 16). The ALJ went on to note the normal findings at a variety of Plaintiff's subsequent physical examinations at other medical appointments; including no claim of back pain at a December 5, 2019 examination by Dr. Jain (Tr. 19, 768). Finally, the ALJ considered, and Plaintiff does not dispute, that he only received

---

[4] The ALJ referred to exhibit 12F but Dr. Layugan's progress note is located at exhibit 1F and is dated June 15, 2018 (and not June 18, 2018 as set forth by the ALJ).

conservative treatment for his back pain, which he had for the past 23 years while he was working (Tr. 21). As to the agency doctor's opinion, the ALJ found that their opinions were "overly generous" given the "diagnostics . . . [and] mild test findings (Tr. 23). The ALJ was not required to accept the agency doctors' opinions in light of the contrary medical evidence.

Plaintiff's argument essentially urges the Court to find that the ALJ erred in failing to find that a singular abnormality within an otherwise normal diagnostic test, without associated functional limitations as found by a treating physician or as demonstrated by the record as a whole, should lead to an RFC for light work. Such an argument is contrary to the Commissioner's responsibility to consider all the evidence in fashioning an RFC which includes the medical records, observations of treating doctors, and "assorted categories of evidence that might shed light on the intensity, persistence, and limiting effects of symptoms." Lawrence v. Saul, 970 F.3d 989, 995 (8th Cir. 2020). Certainly, the ALJ could consider that Plaintiff lived and performed heavy work with his back pain for 23 years, that he only received conservative treatment for his pain, and that a vast majority of his treating doctors found normal functioning upon physical examination. See, e.g., Swarthout v. Kijakazi, 35 F.4th 608, 612 (8th Cir. 2022) (with respect to fibromyalgia stating that while "working may cause discomfort [it] does not dictate a finding of disability"); Milan v. Colvin, 794 F.3d 978, 985 (8th Cir. 2015) (discussing the relevance of conservative medical treatment); Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990) (stating that an impairment is not disabling where the claimant "worked with his impairments over a period of years without any worsening of his condition"). Thus, there is substantial evidence in the record to support the ALJ's finding as to Plaintiff's back condition, notwithstanding the limited moderate findings in diagnostic testing.

This same conclusion can be reached with respect to Plaintiff's heart condition and vertigo/dizziness, which Plaintiff correlates. Plaintiff argues that his heart condition was not benign in light of the medical tests performed, that he complained of worsening dizziness and vertigo at medical appointments, and that Dr. McJunkin diagnosed him with peripheral vestibulopathy (Tr. 529-530). As set forth above and by the ALJ, no testing or medical opinion supports a disabling heart condition even though Plaintiff has some abnormalities (Tr. 21). Dr. Jain, the cardiologist, noted that he had a structurally normal heart and that his (sometimes) abnormal heart rhythm is a "benign diagnosis" that could be treated conservatively, with a continuation of medication and, for example, instructions to drink more water. Fisher v. Kijakazi, 2022 WL 873347, 5 (8th Cir. 2022) (noting that minimal treatment can discredit a claim of disability). The ALJ did not simply assess Plaintiff's heart condition as benign; she adopted the language set forth by Plaintiff's cardiologist. It was also suggested that he undergo ablation, which Plaintiff refused and which never was required by any medical provider. Chamberlain v. Shalala, 47 F.3d 1489, 1495 (8th Cir. 1995) ("Failure to seek aggressive medical care is not suggestive of disabling pain.").

The ALJ acknowledged Plaintiff's complaints of worsening dizziness and vertigo symptoms. However, the ALJ noted, and Plaintiff does not dispute, that testing revealed no ear or brain disfunction that would explain his symptoms; audiology testing did not suggest the peripheral vestibular diagnosis made by Dr. McJunkin prior to testing. While Plaintiff attempts to tie his vertigo to his heart condition, no doctor, and in particular Dr. Jain, tied the two conditions together. There also is no evidence in the record that Plaintiff's vertigo or dizziness leads to functional limitations. Plaintiff exhibited a normal gait and had normal physical examinations when he was observed by medical professionals. Thus, the ALJ was reasonable in concluding that no objective

medical evidence supported Plaintiff's subjective claims of functional limitations related to vertigo/dizziness.  There is substantial evidence in the record to support the ALJ's finding as to Plaintiff heart condition and his claims of vertigo and dizziness.

For completeness, the Court will address Plaintiff's argument that if the ALJ had properly considered his age and the limitations advocated above, the RFC would have been limited to light work and Plaintiff would have been considered not disabled as set forth in medical-vocational guidelines ("Grids").  Defendant counters that Plaintiff's change in age would not have generated a different result.

The Grids are charts listing vocational profiles and are relevant to Step 5 of the sequential analysis.  Phillips v. Astrue, 671 F.3d 699, 702 (8th Cir.  2012); 20 C.F.R. Part 404, Subpt. P., App. 2).  If a combination of Plaintiff's age, education, and past work experience fits into a part of the Grid, then the ALJ must find him disabled or not disabled as directed by the Grid.  Id.  In this case, the ALJ found that Plaintiff was an "individual closely approaching advanced age" because he was age 52 at the disability onset date (Tr. 23).  The ALJ further found that Grid Rule 203.22[5] mandated a not disabled finding because it correlates with a person closely approaching advanced age who had the RFC to perform a full range of medium work with Plaintiff's education and past work experience (Tr. 24).  As Defendant points out, a person of advanced age would also have been found not disabled if the other categories remained the same.  See Grid Rule 203.15.

Plaintiff argues however, that the ALJ should have followed Grid 202.06, which would apply to a person of advanced age who could only perform light work, with Plaintiff's education and experience.  Of course, based on the above, the undersigned does not find that the ALJ erred

---

[5] Section 203.22 refers to an individual closely approaching advanced age who has the RFC to perform medium work, is a high school graduate or more, and performed skilled or semiskilled work of which the skills are not transferrable. 20 C.F.R. Part 404, Subpt. P., App. 2

in concluding that Plaintiff had the RFC to perform medium work. Therefore, Plaintiff's argument must fail because, even if his age was accounted for, he would still have been found not disabled. Finally, also based on the above, Plaintiff has not established that he was only capable of performing light work.

* * * * *

For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **affirmed**.

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 8th day of August, 2022